NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| AKSHAR GLOBAL INVESTMENTS CORP., a California Corporation; AMITKUMAR SHAH, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> CITY OF LOS ANGELES, a municipal corporation; DOES, 1-10 inclusive, <br><br> Defendants-Appellees. | No. 19-55148 <br><br> D.C. No. 2:18-cv-04541-MWF-FFM <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Submitted April 17, 2020**
Pasadena, California

Before: SCHROEDER and COLLINS, Circuit Judges, and BAYLSON,*** District Judge.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*** The Honorable Michael M. Baylson, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Plaintiff-Appellant Amitkumar Shah ("Shah") is the owner and director of Plaintiff-Appellant Akshar Global Investments Corp. ("AGI"), which owns and operates the 108 Motel Inn in Los Angeles, California (the "Motel"). The Second Amended Complaint ("SAC") alleges that in 2018, the City of Los Angeles formally revoked the conditional use permit ("CUP") that allowed the Motel to operate. Appellants sued the City alleging, *inter alia*, that actions taken in connection with the revocation of the CUP were actionable under the Civil Rights Act, 42 U.S.C. § 1983, and the Fair Housing Act, 42 U.S.C. § 3604.[1] The district court dismissed the SAC with prejudice. Appellants appeal from that order.

We have jurisdiction under 28 U.S.C. § 1291 and affirm in part, reverse in part, and remand.

The parties are familiar with the factual and procedural history of this case so we need not repeat it here.

## I.

"We review de novo a district court's dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim." *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011). "We review for abuse of discretion a district court's decision to dismiss

---

[1] We will not address the district court's dismissal of the Fair Housing Act claim because Appellants did not argue it in their opening brief. *See Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986) ("The Court of Appeals will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief . . . .").

with prejudice." *Okwu v. McKim*, 682 F.3d 841, 844 (9th Cir. 2012). "When ruling on a motion to dismiss, we accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## II.

To state a Section 1983 claim against a municipal actor, Appellants must allege that (A) they were deprived of a federally protected right and (B) the injury resulted from "an expressly adopted official policy, a long-standing practice or custom, or the decision of a 'final policymaker.'" *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013) (citation omitted).

Appellants' SAC asserts a variety of constitutional claims arising from the City's revocation of the CUP and from the conduct of City police officers preceding that revocation. With the exception of one of Appellants' claims under the Fourth Amendment, we conclude that the district court properly dismissed Appellants' claims with prejudice.[2]

***Fifth Amendment Takings Clause.*** The allegations in the SAC do not plausibly suggest Appellants' Fifth Amendment right to be free from

---

[2] The SAC also asserted violations of Appellants' First Amendment rights to petition and to freely associate and rights under the Contract Clause. Because Appellants do not discuss these claims in their opening brief, we will not consider them. *See Miller*, 797 F.2d at 738.

unconstitutional takings was violated. This Court has recognized four theories of takings claims: "(1) a physical invasion of property, (2) that a regulation completely deprives a plaintiff of all economically beneficial use of property, (3) a general regulatory takings challenge pursuant to *Penn Central*, or (4) a land-use exaction violating the standards set forth in *Nollan* and *Dolan*."[3] *McClung v. City of Sumner*, 548 F.3d 1219, 1225 (9th Cir. 2008), *abrogated on other grounds by Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013).

The SAC lacks facts that support a takings claim under any of these theories. Further, to the extent the City's decision to revoke the CUP was based on concerns about nuisance caused by Appellants' Motel, the Takings Clause is not implicated because a locality may act in response to criminal activity. *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 492 n.22 (1987) ("Courts have consistently held that a State need not provide compensation when it diminishes or

---

[3] For theory (3), see *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978) (noting that the specific circumstances of each case determine whether a restriction is an unconstitutional taking but that several factors, including the "economic impact of the regulation" and the "character of the governmental action," are particularly significant).

For theory (4), see *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 837 (1987) (holding that for a development exaction to be constitutional, there must be an "essential nexus" between the valid state interest and the permit condition), and *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994) (clarifying that in addition to *Nollan*'s "essential nexus" requirement, "the required dedication [must be] related both in nature and extent to the impact of the proposed development").

destroys the value of property by stopping illegal activity or abating a public nuisance."). Appellants therefore have failed to plead a violation of their rights under the Takings Clause of the Fifth Amendment.

***Fourteenth Amendment Equal Protection Clause.*** The SAC similarly lacks facts supporting the inference that Appellants' rights under the Equal Protection Clause of the Fourteenth Amendment were violated. The equal protection challenge is presumably a "class of one" claim because Appellants allege that "similarly situated properties have not been subjected to the actions taken by" the City. However, the SAC's allegations of differential treatment are wholly conclusory, *see Pierce v. Cty. of Orange*, 526 F.3d 1190, 1225 (9th Cir. 2008), and the SAC likewise fails to plead facts showing that "there is no rational basis for [any] difference in treatment," *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). As a result, Appellants have not alleged an Equal Protection violation.[4]

***Fourteenth Amendment Due Process Clause.*** Appellants' allegation that they were deprived of their Fourteenth Amendment right to procedural due process fails as a matter of law. Appellants had the opportunity (and took advantage of the opportunity) to appear at the initial revocation hearing before the Zoning

---

[4] Likewise, Appellants' claim that their substantive due process rights were violated by the City's "irrational and arbitrary" action fails as a matter of law. *See Richardson v. City & Cty. of Honolulu*, 124 F.3d 1150, 1162 (9th Cir. 1997) (recognizing that the burden to make out such a claim is "extremely high").

19-55148

Administrator. To the extent that Appellants contend that they did not receive sufficient actual notice of the subsequent City Council hearings on their appeal of the revocation, the SAC does not adequately allege that any such deficiency was caused by an official policy, custom, or practice. *Ellins*, 710 F.3d at 1066.

***Fourth Amendment.*** The only remaining claim is the alleged violation of Appellants' Fourth Amendment right to be free from unconstitutional searches and seizures. Shah and AGI both allege violations of this right.

(1) Shah claims his Fourth Amendment rights were violated based on the Los Angeles Police Department ("LAPD")'s unlawful entrance into his personal residence.

(2) AGI claims its Fourth Amendment rights were violated based on LAPD's unlawful entrance and trespass onto the Motel.

(3) AGI further claims its Fourth Amendment rights were violated based on LAPD's unlawful search of AGI's guest registration records.

Even assuming that the alleged officer conduct described in claims (1) and (2) violated the Fourth Amendment, Appellants failed, after multiple opportunities, to adequately allege that such violations were caused by a City "policy, regulation, custom, or usage." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994). The failure to allege facts suggesting a causal relationship between any policy described in the SAC and the Fourth Amendment deprivations related to violations (1) and (2) is fatal

because the City "is only liable when it can be fairly said that the [C]ity itself is the wrongdoer." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992); *see also Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (recognizing that *Monell* liability under a "practice or custom" theory requires showing that the decisions of "those officials who have the power to make official policy on a particular issue . . . caused the deprivation of rights at issue . . . by acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity" (citation omitted)); *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978) (holding that imposing liability on a municipality is only appropriate where the government decisionmaker is the "moving force" behind the constitutional violation).

As pleaded, the factual allegations in the SAC related to claim (3) are not sufficient to give rise to a Fourth Amendment claim based on the Supreme Court's decision in *City of Los Angeles v. Patel*, 576 U.S. 409 (2015). The SAC's allegation that the Motel's registration records were searched pursuant to a CUP condition that was imposed by a vote of the City Council provides a basis for municipal liability based on this "expressly adopted official policy" and this "decision of a 'final policymaker.'" *Ellins*, 710 F.3d at 1066 (citation omitted). However, the SAC lacks specific facts that would allow an inference or conclusion that the City's conduct violated the Constitution. The SAC is silent as to the specific circumstances of the

7                                                                                        19-55148

searches, when the searches occurred, or whether Appellants had access to precompliance review. Similarly, there are no allegations as to the damages, if any, suffered by either or both Appellants for the alleged Fourth Amendment violation. Even construing the allegations in the light most favorable to Appellants, the SAC does not state a claim for violation of the Fourth Amendment under *Patel* with the specificity demanded by *Twombly* and *Iqbal*. *Cf. Capp v. Cty. of San Diego*, 940 F.3d 1046, 1059 (9th Cir. 2019) (finding that the plaintiffs did not plead a claim under the Fourth Amendment because the complaint "contain[ed] no facts as to . . . the specific circumstances" of the conduct that allegedly caused the constitutional violation).

Although the SAC does not contain sufficient facts to allow this Court to conclude Appellants alleged a plausible claim under *Patel*, Appellants' "allegation of plausible facts supporting such a [violation] could have cured the deficiency" in this Fourth Amendment theory. *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012); *see also AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) ("Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" (citation omitted)). Therefore, on remand Appellants will be permitted to amend their complaint to supplement the

allegations related to the City's alleged search of the Motel's registration records.[5]

With a clearer picture of the relevant facts, the district court will be able to assess

the factual sufficiency of Appellants' *Patel* claim.[6]

## III.

For the foregoing reasons, we REVERSE the district court's dismissal of Appellants' Fourth Amendment claim under *Patel* with prejudice, and we REMAND with instructions to the district court to permit an amendment as to that claim only. We AFFIRM the district court's dismissal of Appellants' remaining federal claims. Given our reversal as to one of Appellants' federal claims, we vacate the district court's dismissal of Appellants' pendent state-law claim.

---

[5] Appellants' failure to explicitly raise the issue of the district court's denial of leave to amend in their opening brief does not prevent this Court from reaching the issue on appeal. *See generally Krause v. Sacramento Inn*, 479 F.2d 988, 989 (9th Cir. 1973).

[6] The district court's decision to dismiss the SAC without leave to amend was premised on its conclusion that, because the *Monell* allegations were insufficient, "[f]urther amendment would be futile." However, the order dismissing the FAC did not "address the parties' arguments with respect to the sufficiency of [Appellants'] allegations of violations of various constitutional rights . . . ." Therefore, although Appellants were given an opportunity to amend following the dismissal of the FAC, they understandably focused their amendments on the *Monell* issue that the district court had identified as the basis for its dismissal of the Section 1983 claims. Because we find that Appellants' *Patel* claim adequately alleges an official policy under *Monell* but fails to adequately allege the underlying *Patel* violation, we find it appropriate to remand to the district court so that it can assess in the first instance whether the latter deficiency can be cured by amendment.