9 F.3d 1550
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ALVERNAZ FARMS, INC., et al., Plaintiffs/Appellants,
v.
BANK OF CALIFORNIA, Defendant/Appellee.
 Nos. 92-15703, 92-15704 and 92-15709.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 2, 1993.
Decided Nov. 4, 1993.
 
 1
 Before: D.W. NELSON, NORRIS, Circuit Judges, and TANNER*, Senior District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Alvernaz Farms, Inc., (tomato growers), California Canning Pear Association (pear growers), and Lloyd Rives, a peach grower, and other growers, creditors of Chapter 11 debtor T.H. Richards Processing Company, appeal from the district court's order holding that their rights to prejudgment interest against Bank of California, Security Pacific National Bank, and Harris Trust & Savings Bank ("banks"), is governed by state, rather than by federal law. We have jurisdiction under 28 U.S.C. § 158(d).
 
 
 4
 Appellants are produce growers who sold produce to T.H. Richards (Richards), a food processor, during the 1981 crop year. In July of 1982, Richards filed for bankruptcy, and the growers filed suit in 1982 and 1983 to establish priority of their statutory producers lien claims against the debtor, Richards, and the defendant banks.[1] On September 15, 1992, the court signed a stipulated order between the tomato and pear growers, Richards and the banks, authorizing the sale of inventory in the possession of the debtor against which the growers claimed producers liens, providing that the proceeds of the sales could be held by the debtor or the lender, with the banks allowed to apply the proceeds to reduce debtor's indebtedness. The peach grower, Lloyd Rives, was not a party to the stipulation. Post-petition inventory sales of Richards' processed pears, peaches and tomatoes were made, with the banks collecting the proceeds, depositing them into a cash collateral account, and applying some of those monies to the Richards' loan.
 
 
 5
 On September 26, 1991, the bankruptcy court granted summary judgment in favor of the growers against defendant banks, finding the growers entitled to prejudgment interest, and awarded interest at the federal rate of 8.75%. On October 4, 1991, the banks appealed. The appeals were transmitted to United States District Court, where the 3 appeals were consolidated. The banks paid all amounts due under the judgment, except for the difference by which federal prejudgment interest exceeds state prejudgment interest. The banks conceded the growers' entitlement to prejudgment interest, and appealed only the bankruptcy court determination that the appropriate rate of interest was 8.75% under federal law, rather than 7% under state law.[2] The district court agreed, and reversed that portion of the bankruptcy court judgment which held the growers to be entitled to prejudgment interest at the rate specified in 28 U.S.C. § 1961(a), instructing the bankruptcy court to modify the judgments to award interest at the 7% rate. The growers appealed.
 
 STANDARD OF REVIEW
 
 6
 We review awards and denials of post-petition interest for an abuse of discretion, as a matter of equity. In re Anderson, 833 F.2d 834, 836 (9th Cir.1987). The question whether prejudgment interest must be awarded at the state or federal rate is a question of law subject to de novo review. Nevada Power Co. v. Monsanto, 955 F.2d 1304 (9th Cir.1992).
 
 DISCUSSION
 Awarding of Interest
 
 7
 Plaintiff growers contend that the district court erred in ruling that the growers' rights to post-petition interest were derived from state law, and that the bankruptcy court should have awarded post-petition interest at the state rate of 7%, rather than the rate of 8.75% authorized by federal law, 28 U.S.C. § 1961(a). We disagree.
 
 
 8
 The growers' claim to an entitlement to prejudgment interest at the higher federal rate is based on the bankruptcy court order resulting from a stipulation that dealt with the administration of the debtor's estate and the issue of claimed lien rights in property of that estate, matters within the jurisdiction of the bankruptcy court.[3] Basically, the growers contend that the stipulation and order created new rights and obligations between plaintiffs, the banks, and the debtor that did not exist under the Richards' contract or the Producer's Lien Law.[4]
 
 
 9
 Plaintiff growers attempt to make the connection that, because the bankruptcy court has jurisdiction to administer the property of a bankrupt debtor, it therefore follows that the rights and obligations so created are also governed by federal law, since they are derived from federal statutes which give rise to the bankruptcy proceedings. In support of this position, plaintiffs cite Vanston Bondholders Protective Com. v. Green, 329 U.S. 156, 67 S.Ct. 237 (1947).
 
 
 10
 In Vanston Bondholders Protective Com. v. Green, 329 U.S. 156, the court stated: "It is manifest that the touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or between creditors and the debtor." Id. at 163-65.
 
 
 11
 As previously stated, there is no dispute as to the propriety of awarding interest to the growers, and the bankruptcy court appropriately balanced the equities in awarding prejudgment interest.[5]
 
 
 12
 The banks concede that plaintiffs are entitled to prejudgment interest. It does not follow, however, that the rate of interest is necessarily governed by federal law.
 
 
 13
 Plaintiffs claim that, as their right to post-petition prejudgment interest was created by federal law, that federal law determines the appropriate rate of interest as well.
 
 
 14
 In reversing the bankruptcy court's judgment as to the rate of interest, the district court cited several cases in support of its holding. The court cited Johnson v. Righetti (In re Johnson), 756 F.2d 738 (9th Cir.1985), which provides: "[W]hen a bankruptcy court adjudicates a contract claim in connection with a petition in bankruptcy, the court applies state law to the contract dispute unless the bankruptcy code provides otherwise."
 
 
 15
 The growers contend that the Bankruptcy Code and the Supreme Court do "provide otherwise", and refer to 11 U.S.C. §§ 502(a) (unsecured creditors) and 506(b) (secured creditors).
 
 
 16
 The district court upheld the bankruptcy court's determination that the growers were not entitled to prejudgment interest under § 506(b) of the Bankruptcy Code, as they were not oversecured creditors. The growers' reliance on § 506(b), therefore, is misguided.[6]
 
 
 17
 The growers' claims arise under the Producers Lien Law, and are therefore governed by state substantive law. The district court properly determined that the growers' right to prejudgment interest against the banks is governed by state, rather than by federal law. We affirm.
 
 
 
 *
 The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 California Food and Agricultural Code § 55631 (hereafter "Producers Lien Law") gives the grower of any farm product a lien on the product and on its processed form when the product is sold under contract to any processor
 
 
 [2]
 In California, prejudgment interest accrues at the rate of 7% per annum. Davis & Cox v. Summa Corp., 751 F.2d 1507, 1522 (9th Cir.1985)
 
 
 [3]
 Lloyd Rives, the peach growers, did not enter into the stipulation
 
 
 [4]
 Specifically, the growers claim that the stipulation created in the banks' rights to use the proceeds of sales of T.H. Richards' inventory
 
 
 [5]
 The district court, in fact, based its decision regarding prejudgment interest by balancing the equities in this case, and noting that the banks had full use of the funds due the growers and presumably profited from them. The court found that the equities in the case weighed heavily in favor of an award of prejudgment interest, citing United States v. Cal. State Bd. of Equalization, 650 F.2d 1127, 1132 (9th Cir.1981)
 
 
 [6]
 11 U.S.C. § 506(b) provides: "To the extent that an allowed secured claim is secured by property, the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claims, there shall be allowed to the holder of such claim, interest on such claim and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose."